

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
May 28, 2014
Lyle W. Cayce
Clerk

---

No. 13-30532
c/w No. 13-31246

---

D.C. Docket No. 2:12-CV-577

PATRICIA HAMAKER AYALA, Individually and as Succession
Representative/Administratrix for the Estate of Louis R. Ayala, III,

      Plaintiff - Appellant

v.

ENERCO GROUP, INCORPORATED; MR. HEATER, INCORPORATED,

      Defendants - Appellees

Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and reversed in part.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

ISSUED AS MANDATE: 19 JUN 2014

Fee_____
Process_____
X Dktd_____
CtRmDep_____
Doc. No._____

A True Copy
Attest    19 JUN 2014

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-30532
c/w No. 13-31246

United States Court of Appeals
Fifth Circuit

**FILED**

May 28, 2014

Lyle W. Cayce
Clerk

PATRICIA HAMAKER AYALA, Individually and as Succession
Representative/Administratix for the Estate of Louis R. Ayala, III,

Plaintiff - Appellant

v.

ENERCO GROUP, INCORPORATED; MR. HEATER, INCORPORATED,

Defendants - Appellees

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-577

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

Patricia Ayala brought suit in Louisiana state court against a
manufacturer, its insurers, and a retail store alleging that defects in a propane
heater caused the death of her husband. The case was removed to federal court
by the manufacturer and insurers who argued the non-diverse retailer, Gabriel
Building Supply, was improperly joined. The district court, finding improper

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-30532 & 13-31246

joinder, dismissed Gabriel, and retained jurisdiction over the remaining defendants. The court later granted summary judgment for the defendants on Ayala's products liability claim. The district court also sanctioned Ayala's counsel for filing a second, nearly identical action in state court after the district court denied Ayala's motion to remand the case. Ayala argues the court erred in dismissing Gabriel from the suit and denying her motion to remand. She also appeals the grant of summary judgment for the remaining defendants on her products liability claim. Ayala's counsel challenges the imposition of sanctions. We AFFIRM the district court's dismissal of Gabriel from the suit and the court's grant of summary judgment for the remaining defendants on Ayala's products liability claim. The imposition of sanctions is REVERSED.

## FACTUAL & PROCEDURAL BACKGROUND

In 2011, Ayala purchased a Mr. Heater portable propane heater from Gabriel in Ponchatoula, Louisiana. The heater was manufactured by the defendants, Enerco Group, Inc. and Mr. Heater, Inc. On February 2, 2011, Ayala's husband, Louis R. Ayala III, was using the Mr. Heater in the Ayalas' shed when it exploded, severely burning Louis and causing significant damage to the shed. Louis was hospitalized for severe burns on his entire back, hips, shoulders, arms, and the back of his head. He underwent multiple surgeries but died due to these injuries on August 4, 2011.

Ayala filed suit in Louisiana state court, individually and on behalf of the estate of her husband, against Gabriel Building Supply, Enerco Group, Inc., Mr. Heater Corp., and the defendants' insurers. Enerco and Mr. Heater filed a notice of removal in the federal district court for the Eastern District of Louisiana, contending that the retailer Gabriel was improperly joined, and there would be complete diversity of citizenship once Gabriel was dismissed. Enerco and Mr. Heater argued that, as the non-manufacturer retailer of the heater, Gabriel could only be liable for damages in tort if it knew or should

No. 13-30532 & 13-31246

have known that the product was defective and failed to notify Ayala of the defect. Ayala had not made such an allegation. Ayala filed an amended complaint in the district court, adding a claim of liability for "handling and merchandising," and simultaneously moved to remand the case. She argued the complaint did state a claim against Gabriel for its own negligence in accordance with Louisiana law. On May 3, 2012, the district court dismissed Ayala's claims against Gabriel, finding no reasonable basis to predict that a state court would allow recovery against Gabriel.

After dismissing Gabriel from the suit, the district court also dismissed Ayala's claims for negligence, strict liability, and for manufacture of an ultra-hazardous product. The court held that any recovery could only occur under the Louisiana Products Liability Act ("LPLA"). Enerco and Mr. Heater filed motions for partial summary judgment seeking dismissal of Ayala's remaining products liability claims under the LPLA. The district court granted the motions and dismissed Ayala's claims on April 26, 2013. Ayala timely appealed the court's grant of summary judgment for Enerco and Mr. Heater.

In September 2012, after Gabriel was dismissed from the suit in federal court, Ayala filed a second state court action naming only Gabriel as a defendant. Gabriel then filed a third party demand against Mr. Heater. After Gabriel filed the demand, Ayala filed in state court a motion for leave to file an amended petition in which she asserted claims against Mr. Heater virtually identical to the claims pending in the ongoing suit in federal court. Mr. Heater filed a motion in the ongoing federal proceeding to enjoin the second state court action and requesting sanctions and costs. On November 7, 2012, the district court granted Mr. Heater's motion to enjoin the state court proceedings, reserving the question of sanctions for a later date. At a hearing on December 5, 2012, the court determined that sanctions were appropriate and awarded costs and attorney's fees to Mr. Heater. The court then referred the case to the

No. 13-30532 & 13-31246

magistrate judge for further proceedings on the amount of costs and fees.  On October 29, 2013, the magistrate judge issued a report and recommendation ordering fees and costs in the amount of $5,045.  Before the magistrate judge issued its final order on the amount of fees and costs, Ayala had already filed a notice of appeal in April 2013 seeking review of the district court's final order granting summary judgment for the defendants as well as the court's December 5 order imposing sanctions.  After the October 2013 final order on the amount of sanctions, Ayala filed what she termed an "Amended Notice of Appeal" stating she was amending her first notice of appeal to include the court's October order.  The amended notice of appeal from the final order determining the amount of sanctions was given a separate case number, 13-31246.  We have consolidated the two appeals.

We have these rulings to review: (1) the district court's determination that Gabriel was improperly joined and the denial of Ayala's motion to remand; (2) the district court's grant of summary judgment for Enerco and Mr. Heater on Ayala's remaining products liability claims; and (3) the imposition of sanctions against Ayala's counsel.  Ayala has also argued on appeal that the defendants obstructed the discovery process with improper discovery tactics.

DISCUSSION

I.    *Improper joinder*

We review *de novo* both the district court's denial of a motion to remand to state court and the district court's improper-joinder determination. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (improper joinder); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (motion to remand).  Improper joinder is "a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).  To establish improper joinder, the party seeking removal must demonstrate either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability

4

of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* Only the second way is before us. It requires examination of "whether the defendant has demonstrated . . . that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* "A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 n.9 (5th Cir. 2004) (en banc) (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Mumfrey*, 719 F.3d at 401. The burden of showing improper joinder is a heavy one. *McDonal*, 408 F.3d at 183.

We determine whether there was a right to remove by examining the plaintiff's pleading at the time of the petition for removal. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). When considering improper joinder specifically, "[p]ost-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). Accordingly, we look to Ayala's ability to recover against Gabriel based on the claims in the original state-court pleading. *Id.*

Ayala's state-court complaint alleged that Gabriel was the retailer of the Mr. Heater and that the defendants

> one and all, were negligent under the applicable Louisiana statu[t]es and Civil Code articles, in the following non-exclusive particulars, including the engineering, design, mandates to component manufacturers, collation of component parts, assembly, quality control, inspection of components and the finished product, packaging and shipping, together with other specific instances of negligence to be disclosed by further discovery herein.

No. 13-30532 & 13-31246

Post-removal, Ayala amended the final lines of the above paragraph to include "packaging and shipping, *handling and merchandising*, together with other instances of negligence anticipated to be disclosed by further discovery herein." (emphasis added).  The addition of claims for negligence in the handling and merchandising of the Mr. Heater, a theory not raised in state court, will not be considered in our analysis of whether Gabriel was improperly joined. *Griggs*, 181 F.3d at 700.

In this diversity case, Louisiana substantive law applies.  *Seacor Holdings Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011). Ayala's claims stem from damages arising out of the malfunction of the allegedly defective Mr. Heater.  In Louisiana, the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. REV. STAT. ANN. § 9:2800.52.  The LPLA does not provide a cause of action against sellers of products not falling under the LPLA's definition of "manufacturer." *See* LA. REV. STAT. ANN. § 9:2800.53.  Gabriel is a non-manufacturing seller of the Mr. Heater.  Thus, Ayala cannot allege a viable cause of action against Gabriel under the LPLA.

Because Gabriel is not the manufacturer of the Mr. Heater, "any responsibility for tort damages it may have would necessarily arise under its role as a non-manufacturing seller." *Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 714 (La. 2013).  Under Louisiana tort law, to establish the liability of a non-manufacturing seller of a product, "three requirements must be met: First, the product sold by [Gabriel] must be defective. Second, [Gabriel] must have had actual or constructive knowledge that the product it sold was defective. Lastly, [Gabriel] must have failed to declare the defect." *Id.* Ayala's original complaint contains only the conclusory allegation that Gabriel was negligent under applicable Louisiana law.  Her complaint fails to allege that Gabriel knew or should have known the product was defective or any other

6

factual basis for Gabriel's negligence under Louisiana law. Looking to the allegations of Ayala's state-court complaint and "conduct[ing] a Rule 12(b)(6)-type analysis" we conclude Ayala's complaint fails to state a claim under Louisiana law against Gabriel. *Smallwood*, 385 F.3d at 573. The court did not err in concluding Gabriel was improperly joined and denying Ayala's motion to remand.

## II.   *Ayala's products liability claims*

After the district court dismissed Gabriel from the suit, Enerco and Mr. Heater moved for summary judgment on Ayala's remaining claims. The district court granted the motions, concluding that no dispute of material fact existed under the LPLA.

We review *de novo* a grant of summary judgment, applying the same standard as the district court. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Because Louisiana law applies, we must apply its jurisprudence that, based on civil law principles, caselaw is not the primary source for understanding that state's law. As one of our Louisiana colleagues explained:

> It is axiomatic that in Louisiana, courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana.

*Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999) (Wiener, J.) (footnote omitted). Accordingly, we seek authority first in the LPLA, and only secondarily in discussions in judicial decisions.

The district court accurately identified that the LPLA establishes the exclusive theories of recovery against a manufacturer for damages caused by

No. 13-30532 & 13-31246

their products. LA. REV. STAT. ANN. § 9:2800.52; *see Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995).

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002) (summarizing LA. REV. STAT. ANN. § 9:2800.54).

Ayala needed to produce evidence that created a fact issue on the question of whether this portable propane heater was unreasonably dangerous. A product may be unreasonably dangerous in four ways: (1) construction or composition; (2) design; (3) inadequate warning; and (4) nonconformity to an express warranty. LA. REV. STAT. ANN. § 9:2800.54(B). Ayala contends only that the heater was unreasonably dangerous due to a defect in construction or composition. Ayala also raises an issue about *res ipsa loquitur*.

### a. Construction or composition

"A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA. REV. STAT. ANN. § 9:2800.55. The statute imposes two requirements on a plaintiff: (1) establish the manufacturer's specifications or performance standards for the product, and (2) demonstrate how the product materially deviated from those standards, rendering it unreasonably dangerous. *Jenkins v. Int'l Paper Co.*, 945 So. 2d 144, 150 (La. Ct. App. 2006). The LPLA does not suggest that the existence of a product

defect may be inferred from the fact that an accident occurred. *Weiss v. Mazda Motor Corp.*, 54 So. 3d 724, 726 (La. Ct. App. 2010).

Ayala's summary judgment evidence primarily consisted of deposition testimony from an expert engineer, A.J. McPhate. Because all non-ferrous components of the Ayalas' heater melted in the fire, McPhate examined an identical Mr. Heater model as the basis for his opinions. McPhate's opinion was that the most probable cause of the fire was a propane leak. He then identified five potential areas for fault in the Mr. Heater which could cause such a propane leak: (1) a faulty connection on the propane bottle; (2) failure of the pressure regulator; (3) failure of the safety shutoff valve; (4) a crack in the fitting between the safety shutoff valve and the pressure regulation body; and (5) a crack in the fitting between the safety shutoff valve and the mixing tube. McPhate conceded that while these were all potential areas for a defect in that model Mr. Heater, there was no evidence to suggest the Ayalas' heater itself was defective. He did not perform a structural analysis of the Mr. Heater or destructive testing of an example unit. His conclusions supporting that there could be a leak were based solely on the nature of the item itself. McPhate also admitted that he could not rule out other potential sources of a propane leak other than a defect in the heater, such as a faulty propane bottle or a failure by Mr. Ayala to secure the valve properly on the heater.

The district court's opinion cited a decision where a plaintiff's expert testimony was found to be too speculative to create a genuine factual dispute regarding a defective condition in the product. *See Gladney v. Milam*, 911 So. 2d 366, 368 (La. Ct. App. 2005). There, the plaintiffs brought a products liability action against a tire manufacturer, alleging a defect in one of the tires caused the plaintiff's vehicle to roll over several times. *Id.* at 366. In opposition to summary judgment, the plaintiff submitted the testimony of two experts that, although unable to examine the damaged tire itself, opined that the most

probable cause of the tire failure was fatigue of the polyester cords in the sidewall of the tire resulting from a manufacturing defect. *Id.* at 371. As here, though, the experts conceded the tire blow-out could also have been a result of an alternative design defect or could have been caused by improper maintenance such as under inflation or overloading. *Id.* The court concluded the experts "could only speculate that the tire was defective" and were not sufficient to create a factual issue regarding a defect in the tire. *Id.* at 372.

A plaintiff must offer evidence of a defect based on more than mere conjecture; rather, a plaintiff must offer something in the way of factual support or circumstantial evidence tending to show the existence of a defect. *See Smith v. Gen. Motors Corp.*, 722 So. 2d 348, 353 (La. Ct. App. 1998). In *Smith*, the plaintiff alleged a defect in his vehicle caused the accident and offered an expert's opinion that a defect caused the unwanted acceleration. *Id.* at 349, 351-52. Summary judgment for the defendant was not error, the court concluded, partly because the plaintiff's expert had no physical evidence of any alleged defect, and the plaintiff therefore failed to produce factual support sufficient to establish he would be able to satisfy his evidentiary burden at trial. *Id.* at 352-53.

On the other hand, expert opinions based on evidence gathered during investigation of an accident and inspection of the product at issue that eliminate other potential causes and are based on sufficient circumstantial evidence may "allow a reasonable juror to conclude the expert's opinion on a material fact more likely than not is true." *See Hanover Am. Ins. Co. v. Trippe Mfg. Co.*, 843 So. 2d 571, 575-76 (La. Ct. App. 2003). In *Hanover*, the parties disputed whether a fire was caused by an uninterruptible power supply ("UPS") device that was unreasonably dangerous in construction or composition. *Id.* at 572. The plaintiff provided the testimony of two experts that the fire originated with the UPS and that defects in the UPS ignited the

fire. *Id.* at 575-76.  Both experts examined the scene of the fire to assess its point of origin and inspected the melted wiring in the UPS to eliminate other electrical devices as the source of origin.  *Id.* at 575.  One of the experts also studied the schematic diagram of the UPS device to identify three potential faults in the device.  Due to the fire damage to the UPS, the expert could not determine with specificity the fault that caused the fire, but could opine based on his inspection that a short circuit in the UPS was the fault that caused the fire.  *Id.* at 576.

McPhate's testimony here was admittedly based on conjecture about the Mr. Heater product generally.  His hypothetical testimony would require the court impermissibly to infer the existence of a defect solely from the fact that an accident occurred.  *Id.*

In addition to McPhate's expert opinion, Ayala presented her own affidavit attesting that her husband was familiar with the Mr. Heater propane heater, having used that model heater before, and was meticulous about following instructions and caring for his equipment.  She also stated in her affidavit that she had used the previously purchased propane bottle Mr. Ayala connected to the Mr. Heater, took it in for refills, and was confident that it functioned properly.  She argues her testimony, taken with McPhate's, makes it extremely improbable that her husband could have been at fault for the fire, thus creating a factual dispute as to whether a defect in the heater caused the fire.  Ayala contends the court erred by weighing the credibility of the witnesses and failing to give credit to her testimony.

The problem with her affidavit is that Ayala was not present on the day the fire occurred and cannot provide evidence of Mr. Ayala's actions or the state of the propane bottle on the day of the fire.  She was offering her lay opinion, extrapolating from her knowledge of her husband's habits and her use of the propane bottle, that the fire could not have been due to her husband's mistake

No. 13-30532 & 13-31246

or the fault of the propane tank.   Louisiana has adopted the standard evidentiary rule on lay opinion testimony, which states:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
> (1) Rationally based on the perception of the witness; and
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

LA. CODE EVID. ANN. art. 701.   Under Rule 701, "speculative opinion testimony by lay witnesses — i.e., testimony not based upon the witness's perception — is generally considered inadmissible." *Washington v. Dept. of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993).   In particular, a "witness must have personalized knowledge of the facts underlying the opinion." *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002).

Ayala did not have personalized knowledge of the facts underlying her opinion that the fire could not have been the fault of her husband or the propane bottle.   She did not perceive the events that day, the actions of her husband, or the functioning of the propane bottle.   Therefore, her opinion cannot be based on her perception of the events that day. *See State v. Taylor*, 669 So. 2d 364, 384 (La. 1996) (concluding lay opinion or inference is only permissible if based on things perceived by witness firsthand).   Even if Ayala's opinion that her husband was experienced and careful with the use of a Mr. Heater, or that the propane bottle previously functioned properly, are themselves based on first-hand observations, it does not follow that she may properly state her opinion that her husband on the relevant day would have been careful and the bottle would have performed properly because that opinion is not based on what she perceived firsthand on that day.

Taken as true, Ayala's testimony can do nothing more than show that, based on her observations, her husband was careful in his use of the Mr. Heater

and the propane bottle itself had functioned properly on prior occasions. Her testimony as to the cause of the fire, on the other hand, is speculation lacking any basis in personal perception of the events that day. The testimony, therefore, is insufficient to create a fact issue as to the defective nature of the heater. The district court did not err in concluding the summary judgment evidence was insufficient to create a material fact issue on whether this Mr. Heater was defective.

### b. *Res ipsa loquitur*

Ayala also argues she may rely on the doctrine of *res ipsa loquitur* to establish the Mr. Heater was defective in construction. The doctrine is a rule of circumstantial evidence "utilized when there has been a highly unusual act/occurrence; there is no *direct* evidence to suggest that a defendant's negligence brought about said act/occurrence; and yet, the circumstances surrounding the anomalous event . . . allow the finder of fact to conclude that the defendant was negligent." *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So. 2d 35, 43-44 (La. 2006). The Louisiana Supreme Court has held that a products liability plaintiff may use the doctrine to "make the inference that a product was unreasonably dangerous." *Id.* at 49. For *res ipsa loquitur* to apply, however, a plaintiff must "sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides [the] defendant in causing the accident." *Id.* at 50.

The district court did not err in concluding Ayala could not avail herself of this doctrine. McPhate opined that a propane leak caused the fire and identified three potential sources of the leak: a defect in the heater, Mr. Ayala's fault in not tightening a valve correctly, or a fault in the propane bottle. McPhate conceded that he could not exclude any of those potential sources as the source of the leak that caused the fire. We have already indicated that Ayala's opinion about her husband's general care in using the heater and her

13

belief that the propane bottle functioned properly was not probative. "[W]e cannot say that the only reasonable and fair conclusion is that the fire resulted from [the] defendant's negligence." *Aetna Life & Cas. Co. v. AMI-Elec. & Hoist Service*, 637 So. 2d 173, 175 (La. Ct. App. 1994). Because reasonable hypotheses as to other causes of the propane leak and fire remain, Ayala may not rely on the doctrine of *res ipsa loquitur*. Summary judgment dismissing Ayala's products liability claim was not error.

### III.   Sanctions

The district court imposed sanctions on Ayala's counsel under 28 U.S.C. § 1927. It provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "An award of attorney's fees under § 1927 requires evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 871 (5th Cir. 2014). We review a district court's award of sanctions under Section 1927 for abuse of discretion. *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 479 (5th Cir. 2012). "A district court abuses its discretion if it awards sanctions based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Lawyers Title Ins. Corp.*, 739 F.3d at 856.

The district court imposed sanctions after finding that counsel had subverted the court's jurisdiction by filing claims against Mr. Heater in a second state court action virtually identical to the ones pending before the district court. At a hearing on the matter, Ayala's counsel argued that it was necessary to assert the claims against Mr. Heater in the state court action to

No. 13-30532 & 13-31246

protect the plaintiff's rights and not lose claims to prescription. The district court found those justifications specious at best. It concluded that Ayala's rights against Mr. Heater were adequately protected in its court and the actions evinced a reckless disregard of the duty owed to the court. The court enjoined the state court proceedings and assessed Ayala's counsel the costs and fees incurred by Mr. Heater in bringing the motion to enjoin the state court proceedings.

The validity of the district court's decision to enjoin the second state court action is not before us. We only determine if the court abused its discretion by imposing sanctions under Section 1927 on the basis that Ayala's counsel acted with a reckless disregard for the duty owed to the court. Ayala's counsel argues that Gabriel remained a viable defendant after the district court refused to remand the case and that he was "forced" to re-file in state court. He further argues that alleging claims against Mr. Heater was necessary to "avoid possible malpractice charges and running of delays applicable to third-party actions under Louisiana law."

Counsel's decision to make a second filing in state court against the same defendants who were still in federal court was inconsistent with the federal district court's assumption of jurisdiction over the claims against those parties. We accept that counsel did not advance legally sound arguments for his filing these nearly identical claims against Mr. Heater in the second state court action. It is not enough, however, that counsel made legal error. When, as here, there is no evidence of counsel's bad faith or improper motive, recklessness by counsel may be enough to conclude an attorney vexatiously multiplied the proceedings. Still, "Section 1927 only authorizes shifting fees that are associated with the *persistent* prosecution of a meritless claim." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002) (quotation marks omitted; emphasis added). "The courts often use repeated

15

filings despite warnings from the court, or other proof of excessive litigiousness, to support imposing sanctions." *Id.*; *see also, e.g., Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 181 (5th Cir. 2007).

We conclude there is no evidence that counsel's conduct in filing the second state court action was a result of bad faith, improper motive, or reckless disregard of the duty owed the court. Counsel for Ayala did not persistently prosecute a meritless claim despite warnings from the court; rather, the evidence reflects that counsel at worst errantly believed that unless the second action was filed, his client would lose certain claims. *Lawyers Title Ins. Corp.*, 739 F.3d at 871-72. While counsel's justifications for filing the second state court action may lack merit, that "is not a sufficient basis for awarding sanctions." *Id.* at 872. "Section 1927 sanctions should be employed only in instances evidencing a serious and standard disregard for the orderly process of justice, lest the legitimate zeal of an attorney in representing [a] client [be] dampened." *Id.* (quotation marks omitted) (alteration in original). The district court abused its discretion in imposing sanctions against Ayala's counsel.

IV.   *Discovery*

We briefly address Ayala's argument that the defendants "intentionally blocked, delayed, and obstructed" the discovery process. Ayala does not identify any specific ruling by the district court of which she seeks review. The arguments may best be construed as challenging the court's confidentiality and protective order entered on December 7, 2012, after Ayala's counsel refused to sign the confidentiality stipulation and protective order proposed by the defendants.[1] In her brief, Ayala contends the court erroneously imposed the

---

[1] In response to Ayala's first set of interrogatories, the defendants agreed to provide all requested information, including confidential and proprietary information, subsequent to the entry of an appropriate protective order and/or an executed confidentiality agreement. Counsel for Ayala refused to discuss the terms of a confidentiality agreement and instead filed a motion to compel. In ruling on the motion to compel, the magistrate judge ordered

No. 13-30532 & 13-31246

non-disclosure order contrary to established discovery policies. Nevertheless, it does not appear from the record that Ayala objected to the court's entry of the protective order or any of the discovery rulings made by the magistrate judge. Any objections should have been raised with the trial court, rather than for the first time on appeal. *XL Specialty Ins. Co. v. Kiewit Offshore Servs. Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008). Moreover, we review a district court's discovery rulings for abuse of discretion. *Wiwa v. Royal Dutch Petroleum, Co.*, 392 F.3d 812, 817 (5th Cir. 2004). We find nothing in the record indicating the court abused its discretion in entering the protective order.

The judgment of the district court dismissing Ayala's products liability claims is AFFIRMED. The imposition of sanctions against Ayala's counsel is REVERSED.

---

Ayala to sign the confidentiality stipulation and protective order proposed by the defendants, who would then be directed to respond to Ayala's discovery requests within 48 hours of the signing. The proposed confidentiality agreement and protective order reserved Ayala's right to challenge any of the defendants' confidentiality designations. When Ayala's counsel continued to refuse to sign the confidentiality stipulation and protective order, the magistrate judge entered the protective order proposed by the defendants as her own order on December 7, 2012. This appears to be the series of events which Ayala's counsel assigns error on appeal.